**IT IS ORDERED as set forth below:**



**Date: March 13, 2017**

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 16-51326-JRS |
| | : | |
| JENNIFER FRANCES AMBROSE, | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |
| JENNIFER FRANCES AMBROSE, | : | |
| | : | |
| Movant, | : | |
| | : | Contested matter |
| v. | : | |
| | : | |
| ADVANTAGE FUNDING | : | |
| COMMERCIAL CAPITAL CORP., | : | |
| CLAIM NO. 12-1, | : | |
| | : | |
| Respondent. | : | |

**ORDER**

Before the Court is Debtor's Objection to Proof of Claim of Advantage Funding Commercial Capital Corporation Claim # 12-1. (Doc. 61). The Objection is in regards to a

1

deficiency claim arising from the sale of a 2009 Nissan UD 3300 Vocational Truck, Vin No. JNAPC81L79AC75035 (the "Collateral") in which the creditor had a perfected first-priority lien.

## Background

On February 5, 2015, Advantage Funding Commercial Capital Corporation ("Advantage Funding") executed a Master Promissory Note and Security Agreement (the "Note") with Ambrose Industrial Services Corporation ("AISC"), a company owned by Ms. Ambrose. As a result, Advantage Funding retained a first priority security interest in the Collateral. The certificate of title also listed the Collateral as AISC's property. Ms. Ambrose personally guaranteed the Note, but otherwise had no legal or equitable interest in the Collateral. AISC eventually defaulted on the monthly payments pursuant to the Note's terms.

On January 23, 2016, AISC filed its voluntary petition for relief under Chapter 7. *See In re Ambrose Industrial Servs. Corp.*, Case No. 16-51268-WLH. Advantage Funding moved for relief from the automatic stay which was granted on March 7, 2016. The Order authorized Advantage Funding to "proceed with the enforcement of its rights and remedies in and to the Collateral under the loan documents and applicable non-bankruptcy law including, but no limited to, self-help repossession." Order Granting Motion for Relief from Stay, Case No. 16-51268-WLH.

Ms. Ambrose filed the current petition on January 25, 2016 for Chapter 13 relief. (Doc. 1). She listed Advantage Funding as a *secured* creditor as to the Collateral in the amount of $136,446.00 on her Schedule D. On March 29, 2016, Advantage Funding filed a *general unsecured* claim, Claim #12-1 (the "Claim") in the amount of $149,057.46. On April 29, 2016,

2

Advantage Funding repossessed[1] the Collateral from a third-party's lot pursuant to the Order lifting the stay in the AISC bankruptcy.

On July 7, 2016, Ms. Ambrose filed the Objection to Claim, arguing that Advantage Funding's claim should be reduced to the deficiency amount because she was no longer in possession of the Collateral. Advantage Funding filed its response to the objection, arguing that as soon as a sale of the Collateral is finalized, it would amend its Claim. (Doc. 65). On November 7, 2016, Advantage Funding filed a brief in support of its response. (Doc. 87). Notably, Ms. Ambrose's objection has evolved over the course of time from the original demand that the claim be reduced to the deficiency amount, to arguing that Advantage Funding failed to give proper notice under the Georgia Motor Vehicles Sales Finance Act (the "Georgia Act"), O.C.G.A. §§ 10-1-30 *et seq.* As such, in the brief, Advantage Funding addressed Ms. Ambrose's newest argument, that Advantage Funding failed to satisfy the Georgia Act.

On December 15, 2016, the Court Ordered and Noticed a rescheduled hearing on the Objection to Proof of Claim which would be held on January 24, 2017. (Doc. 89). Both parties appeared at the hearing and addressed, among other things, whether Advantage Funding was a "sales finance company" under the Georgia Act which, if it was, would have required Advantage Funding to provide certain notice within 10 days of repossession pursuant to the Georgia Act to maintain a deficiency claim. At the conclusion of the hearing, the Court allotted Ms. Ambrose until February 3, 2017 to file a brief on the issue, and Advantage Funding until February 13,

---

[1] After Ms. Ambrose threatened a contempt action for the repossession of the Collateral, Advantage Funding filed a Motion for an Order Confirming No Automatic Stay is in Effect on May 3, 2016. (Doc. 30). The Court granted Advantage Funding's motion on May 31, 2016 finding the stay was not in effect because the Collateral was never property of the debtor's estate because AISC was listed as the owner of the Collateral. (Doc. 43).

2017 to respond. Ms. Ambrose ultimately never filed a brief, but Advantage Funding timely filed an additional brief on February 13, 2017 (Doc. 92).

## Discussion

### I.   Advantage Funding does not constitute a sales finance company

At the January 24, 2017 hearing, Ms. Ambrose argued that Advantage Funding was a sales finance company under the Georgia Act and, because it failed to provide the additional notice, Advantage Funding was not entitled to a deficiency claim. Pursuant to the Georgia Act, certain transactions involving motor vehicles require additional notice to recover a deficiency against a buyer. Specifically,

> (a) When any motor vehicle has been repossessed after default in accordance with Part 6 of Article 9 of Title 11, the *seller* or *holder* shall not be entitled to recover a deficiency against the buyer unless within ten days after the repossession he or she forwards by registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer.

O.C.G.A. § 10-1-36(a) (emphasis added). However, a deficiency claim is only barred if the person seeking such a claim is a "seller"[2] or "holder" under the Georgia Act. A "holder" of a retail installment contract is defined as "the retail seller of a motor vehicle under the contract or, if the contract is purchased by a sales finance company or another assignee, the sales finance company or other assignee at the time of the determination." O.C.G.A. § 10-1-31(a)(3). First, a retail installment contract is an instrument that creates a purchase money security interest. O.C.G.A. § 10-1-31(a)(9). Further, a "sales finance company" is defined in the Georgia Act as "a

---

[2] A "seller" is a "person engaged in the business of selling motor vehicles to retail buyers in retail installment transactions." O.C.G.A. § 10-1-31(a)(10). Ms. Ambrose did not allege that Advantage Funding is a "seller" under the Georgia Act. However, even if she did, Advantage Funding operates a transportation finance and leasing business. There is no evidence that Advantage Funding

4

person engaged in the business of purchasing retail installment contracts from one or more retail sellers." O.C.G.A. § 10-1-31(a)(12).

In determining whether Advantage Funding is a sales finance company under the Georgia Act, the Court must look to the plain language of the statutes at issue. Where the language of a statute is clear, the "sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) (internal quotations omitted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989)). The Court finds the relevant language is clear, and thus the analysis begins and ends with the plain language.

As such, the Court disagrees with Ms. Ambrose and finds that Advantage Funding is not a sales finance company under the Georgia Act. In order for Advantage Funding to be a sales finance company under the Georgia Act, it would be necessary that Advantage Funding had *purchased* a retail installment contract from a "seller." *Massey v. Stephens*, 155 Ga. App. 243, 247, 270 S.E.2d 795, 799 (1980) (finding the Georgia Act inapplicable because there was no retail installment contract where there was no financing furnished by the seller or its assignee in order to purchase the collateral); *Motor Contract Co. of Atlanta v. Sawyer*, 123 Ga. App. 207, 208, 180 S.E.2d 282, 283 (1971) (noting the Georgia Act governs sales finance companies "engaged in the business of purchasing retail installment contracts from retail sellers"). Second, Advantage Funding would have to be engaged in such a business of purchasing retail installment contracts. *Ervin v. Arnold*, 197 Ga. App. 841, 842, 399 S.E.2d 548, 549 (1990) (finding that compliance with the Georgia Act is not required when person is not in the business of selling vehicles in retail installment contracts).

5

The facts before the Court are not in dispute: Advantage Funding has a perfected first-priority security interest in and lien against the Collateral. Advantage Funding has a security interest as a result of the terms of the Note. There is no evidence establishing that Advantage Funding sold and financed the Collateral or purchased an instrument creating a purchase money security interest from a "seller." *In re Graupner*, 356 B.R. 907, 922 (Bankr. M.D. Ga. 2006) (discussing that the first step to determine if the Georgia Act applies is whether there was a purchase money security interest created in a retail installment contract). Additionally, Advantage Funding operates a transportation finance and leasing business, and is not in the business of purchasing retail installment contracts. The Court is unpersuaded and unwilling to extend the boundaries of the clear text of the Georgia Act. *In re Lease Purchase Corp.*, No. 87-11177, 1994 WL 16005421, at *2-3 (Bankr. S.D. Ga. May 18, 1994) (refusing to extend the definition of "buyer" to include the trustee). As such, the Court finds Advantage Funding is not a sales finance company for the purposes of the Georgia Act and, therefore, was not required to provide additional notice in order to recover a deficiency claim.

**II.    Ms. Ambrose waived her right to a defense of additional notice entitlement**

At the January 24, 2017 hearing, Advantage Funding argued that the Note contained an express waiver of any statutory notice. Advantage Funding filed a supplement brief on this issue, but even though ordered by the Court, Ms. Ambrose never briefed the Court on this particular argument. The Court agrees with Advantage Funding that the Note's express waiver is valid and enforceable. In particular, Ms. Amborse's personal guarantee states:

> GUARANTOR HEREBY WAIVES: PRESENTMENT, NOTICE
> OF DISHONOR AND PROTEST, NOTICE OF DEFAULT BY
> DEBTOR, OF SALE OR OTHER DEALING WITH ANY

6

> SECURITY AND ANY OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITED.

Claim 12-1, p. 18. As such, Advantage Funding alleged that even if the Georgia Act applied to Advantage Funding, Ms. Ambrose cannot rely on the failure to provide proper notice because she waived such a defense as the guarantor.

Generally, where parties freely enter a contract, it will not be avoided unless they violate public policy or are prohibited by statute. *RSN Props., Inc. v. Eng'g Consulting Servs., Ltd.*, 301 Ga. App. 52, 53-54, 686 S.E.2d 853, 854 (2009) ("[T]he courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt."). Georgia law does not recognize a rule forbidding a contracting party from "waiving all recourse in the event of breach by the other." *Precision Planning, Inc. v. Richmark Cmtys. Inc.*, 298 Ga. App. 78, 79, 679 S.E.2d 43, 46 (2009) (quoting *Imaging Sys. Int'l v. Magnetic Resonance Plus*, 227 Ga. App. 641, 490 S.E.2d 124 (1997)). "Moreover, in most circumstances, a party's broad freedom to contract includes the right to waive his or her defenses to the enforcement of that contract." *Kothari v. Tessfaye*, 318 Ga. App. 289, 298, 733 S.E.2d 815, 822 (2012); *Nine Twenty, LLC v. Bank of the Ozarks*, 337 Ga. App. 180, 181, 786 S.E.2d 555, 557 (2016) (allowing lender to continue action even though it failed to seek confirmation of the foreclosure sales, which was waived in the notes in issue). So long as the waiver does not adversely affect others or the public interest, the contract is otherwise valid. *Kothari*, 318 Ga. App. at 299, 733 S.E.2d at 821; *McFann v. Sky Warriors, Inc.*, 268 Ga. App. 750, 757, 603 S.E.2d 7, 14 (2004) ("A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest.").

O.C.G.A. § 13-8-2 contains a non-exhaustive list of illustrations of contracts that will be deemed against public policy, stating a "contract that is against the policy of the law cannot be enforced." Ultimately, even if state policy is not listed in O.C.G.A. § 13-8-2, a contract could be against public policy if it affects the public interest. *RSN Props., Inc.*, 301 Ga. App. at 54, 686 S.E.2d at 855 (finding a limited liability provision, that still held the party liable to potential negligence to third parties, was not against public policy); *McFann*, 268 S.E.2d at 14, 603 S.E.2d at 758 (noting that courts will only find a contract against public policy if "the case is free from doubt and where an injury to the public interest clearly appears"); *see, e.g.*, *Young v. John Deere Plow Co.*, 102 Ga. App. 132, 115 S.E.2d 770 (1960) (finding a contractual waiver of the defense of failure of consideration was enforceable because it does not injure or threaten the public). However, courts typically exercise caution in finding a contract void as against public policy and should only do so "in cases free from doubt." *Cleveland Motor Cars, Inc. v. Bank of America, N.A.*, 295 Ga. App. 100, 102, 670 S.E.2d 892, 895 (2008) (quoting *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393, 292 S.E.2d 903, 904 (1981)).

In this matter before the Court, the contract does not fall within the ambit of O.C.G.A. § 13-8-2. Additionally, the personal guarantee provision does not clearly injure or affect the public interest. While it does waive some specific defenses that the guarantor might typically have, it does not put the public at risk for abusive behavior that would harm the public. The only parties who would be affected by this provision are the contracting parties: the guarantor and Advantage Funding.

Additionally, a party cannot contract away liability when such an agreement is expressly prohibited by statute.[3] *See, e.g. Lanier At McEver, L.P. v. Planners & Eng'rs Collaborative, Inc.*, 284 Ga. 204, 207, 663 S.E.2d 240, 243 (2008) (finding a contract against public policy because "complete avoidance of liability to third parties for sole negligence … is exactly what OCGA § 13-8-2(b) prohibits."); *RSN Props., Inc.*, 301 Ga. App. at 84, 686 S.E.2d at 854-55 (finding a provision valid because no statute prohibited a limited liability contract for professional services from a real estate developer). The Georgia Act does not contain any such prohibitions. The Georgia Act does not even refer to guarantors, but rather involves transactions between "buyers," "holders," "sellers," and "sales finance companies." All of these are defined terms while there is no specific reference or relation to guarantors. Therefore, because the waiver does not violate public policy and is not expressly prohibited by statute, the provision waiving Ms. Ambrose's right to assert a notice defense is valid and enforceable.

## Conclusion

Based on all relevant matters of record, the parties' arguments at the hearings and as provided in the briefs, and for the foregoing reasons stated herein, it is hereby

---

[3] In contrast to waiving statutory liability, guarantors have been allowed to contractually waive statutorily provided defenses. *PNC Bank, Nat. Ass'n v. Smith*, 298 Ga. 818, 822, 785 S.E.2d 505, 508 (2016) (agreeing with the Court of Appeals that held "the guarantor waived any rights … based on the explicit language in the guaranty agreement …. [and such] is in line with the fundamental principle that the freedom to contract is sacrosanct."); *HWA Props., Inc. v. Cmty & S. Bank*, 322 Ga. App. 877, 887, 746 S.E.2d 609, 617 (2013) ("[The] personal guaranty includes an express and comprehensive waiver of any and all defenses to his liability on the entire balance due on the note.").

9

**ORDERED** that Debtor's Objection to Proof of Claim of Advantage Funding Commercial Capital Corporation Claim # 12-1 is **DENIED** as to the legal issues asserted and discussed herein, but **GRANTED** to the extent the Claim has not been reduced to reflect the balance due after the sale of the Collateral. The Claim must be amended within 30 days from the entry of this Order to reflect that proper amount. Failure to timely amend the Claim may result in its disallowance. The Chapter 13 Trustee shall not fund the Claim until it is amended.

**END OF DOCUMENT**